```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
DARIN POOLE,                                    NOT FOR PUBLICATION

                    Plaintiff,                  **MEMORANDUM & ORDER**
                                                18-CV-7181 (MKB)
        v.

NEW YORK CITY, BROOKLYN NORTH
TASK FORCE, NEW YORK STATE,
and NEW YORK CITY POLICE DEPARTMENT,

                    Defendants.
---------------------------------------------------------------
```

MARGO K. BRODIE, United States District Judge:

Plaintiff Darin Poole, proceeding *pro se*, filed the above-captioned action on December 13, 2018, against Defendants New York City ("NYC") and Brooklyn North Task Force ("BNTF"), pursuant to 42 U.S.C. § 1983. (Compl., Docket Entry No. 1.) On February 13, 2019, Plaintiff filed an amended complaint adding Defendants New York State ("NYS"), and the New York City Police Department ("NYPD").[1] (Am. Compl., Docket Entry No. 4.) The Court grants Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 solely for the purposes of this Memorandum and Order. For the reasons set forth below, the Court dismisses the Amended Complaint and grants Plaintiff leave to file a second amended complaint within thirty (30) days of this Memorandum and Order.

**I. Background**

The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of this Memorandum and Order. Plaintiff alleges that on October 13th or 14th, 2018,

---

[1] Plaintiff named the BNTF as a Defendant in the Complaint but omitted the BNTF from the caption of his Amended Complaint. The Court nevertheless considers the allegations against the BNTF.

he was arrested while leaving his girlfriend's apartment in Brooklyn, New York. (Am. Compl. 3.) As Plaintiff walked out of his girlfriend's apartment, a black Mercedes SUV minibus drove to the front of his girlfriend's building "[a]nd out jumped a team of undercover cops who ran towards [him] yelling get on the ground now." (*Id*. at 5.) Plaintiff did so and was subsequently handcuffed. (*Id*.) One of the arresting officers, John Doe #1, searched a tote bag that Plaintiff was carrying with him. (*Id*.) The tote bag contained only a sweatshirt and legal papers. (*Id*.)

Plaintiff observed John Doe #1 take his tote bag, empty the contents of the bag, walk to the back of an unmarked police vehicle, and pull out a black plastic bag that contained a jar. (*Id*. at 6.) Plaintiff then observed John Doe #1 hand the black plastic bag and Plaintiff's tote bag over to another officer, John Doe #2, who "plant[ed] [the black plastic bag] . . . inside of [his] tote bag." (*Id*.) John Doe #2 then took the bag out of the tote bag and said, "look what we found here." (*Id*. at 7.) The jar contained illegal narcotics which did not belong to Plaintiff. (*Id*.) Plaintiff told John Doe #2, "that bag came from the front seat" of the car, and the officer responded, "that part is true but it[']s your[s] now." (*Id*.) Plaintiff was subsequently charged with conspiracy to distribute crack cocaine and conspiracy to distribute heroin. (*Id*. at 8.) Plaintiff's case was transferred from the BNTF to federal officers because of the "bullets that the [officers] had [also] planted in [his] tote bag . . . ." (*Id*.)

Plaintiff alleges violations of his rights under the Second and Fourth Amendments of the U.S. Constitution, and seeks dismissal of all charges against him and $150 million in damages. (*Id*.)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

### b. Plaintiff fails to state a claim

The Court liberally construes the Amended Complaint to assert a claim pursuant to 42 U.S.C. § 1983 alleging the violation of Plaintiff's constitutional rights.

To sustain a claim brought under section 1983, a plaintiff must allege that (1) "the conduct complained of . . . [was] committed by a person acting under color of state law," and (2) "the conduct complained of must have deprived . . . [the plaintiff] of rights, privileges or

immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Moreover, the plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

### i. Claims against the NYPD and the BNTF

Plaintiff's claims against the NYPD and the BNTF fail because the NYPD and the BNTF are not suable entities.

Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter, ch. 17 § 396. This provision "has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued." *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159–60 (2d Cir. 2008) (per curiam); *see also Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) ("It is well settled in this Court that, as a general matter, agencies of New York City are not suable entities in § 1983 actions."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City."); *Morris v. N.Y.C. Police Dep't*, 59 F. App'x 421, 422 (2d Cir. 2003) (affirming dismissal of claims asserted against the NYPD due to non-suable-entity status); *Clark v. City of New York*, No. 13-CV-210, 2016 WL 11469535, at *5 (E.D.N.Y. July 22, 2016) ("All lawsuits against NYPD, or one of its precincts or subdepartments, must be brought directly against the City."); *Waheed v. City of New York Gun & License Div.*, No. 07-CV-179, 2007 WL 465569, at *2

4

(E.D.N.Y. Jan. 31, 2007) ("To the extent plaintiff seeks to sue agencies of the City of New York, such as the . . . New York City Police . . . , the claims against these defendants are dismissed as these agencies lack independent legal existence and therefore are not suable entities.").

Because the NYPD and the BNTF are agencies of the City of New York, they are not amenable to suit, and any action against the NYPD or the BNTF must instead be brought against the City of New York. Accordingly, the Court dismisses Plaintiff's claims against the NYPD and the BNTF.

### ii. Claims against the City of New York

Plaintiff fails to state a claim against the City of New York.

A municipality like the City of New York can be liable under section 1983 only if a plaintiff can demonstrate "(1) an official [municipal] policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to

5

deliberate indifference); *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

In the Amended Complaint, Plaintiff fails to allege any facts to support an inference that an official policy or custom of the City of New York caused a violation of any federally protected right.[2] Accordingly, the Court dismisses Plaintiff's Amended Complaint against the City of New York for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### iii. Claims against the State of New York

Plaintiff cannot bring a claim against the State of New York because under the doctrine of sovereign immunity, the State of New York cannot be sued.

"As a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law." *KM Enters., Inc. v. McDonald*, 518 F. App'x 12, 13 (2d Cir. 2013) (first citing U.S. Const. amend. XI; and then citing *Alden v. Maine,* 527 U.S. 706, 727–28 (1999)). States may only be sued in federal court when they have waived their sovereign immunity, Congress has acted to abrogate state sovereign immunity pursuant to Section 5 of the Fourteenth Amendment, or the plaintiff is suing a state official in his or her official capacity for prospective injunctive relief from an ongoing constitutional violation. *See* U.S. Const. amend. XI; *Va. Office for Prot. & Advocacy v. Stewart*, 564 U.S. 247, 255 (2011); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144,

---

[2] In the Complaint, Plaintiff alleges that "[b]ecause of the color of our skin[,] Black Afro Americans are target[ed] as drug dealers in poor class" communities. (Compl. 4.) Although Plaintiff did not include this allegation in his Amended Complaint, the allegation does not support an inference that an official policy or custom of the City of New York caused a violation of any federally protected right. *See McDaniels v. Alepandr*, No. 19-CV-2286, 2019 WL 1936723, at *2 (E.D.N.Y. May 1, 2019) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability on a municipality unless proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy that can be attributed to a municipal policymaker."); *Khalil v. City of New York*, No. 17-CV-1729, 2019 WL 1597315, at *4 (E.D.N.Y. Apr. 15, 2019) (dismissing claims against NYC because although plaintiff alleged that NYC had engaged in a policy of wrongful arrests targeting individuals with mental illnesses, he had failed to include any facts or non-conclusory statements supporting those claims).

152 (2d Cir. 2013); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006).

Plaintiff's claims against the State of New York are therefore dismissed.

### c. Leave to amend

Because of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file a second amended complaint within thirty (30) days of the date of this Memorandum and Order. Plaintiff must include any and all allegations that he wishes to pursue in his second amended complaint, as it will completely replace the Amended Complaint. The second amended complaint should be captioned "Second Amended Complaint" and bear the same docket number as this Memorandum and Order.

### III. Conclusion

For the reasons set forth above, the Court dismisses the Amended Complaint and grants Plaintiff leave to file a second amended complaint within thirty (30) days of the date of this Memorandum and Order. If Plaintiff fails to file a second amended complaint within thirty (30) days as directed by this Memorandum and Order, the Court will close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and *in forma pauperis* status is therefore denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: July 29, 2019
      Brooklyn, New York

                              SO ORDERED:

                                  s/ MKB
                            MARGO K. BRODIE
                            United States District Judge